IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **JARED WRIGHT,** | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-12-0577 |
| **KONIAG SERVICES, INC.,** | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This employment discrimination case was filed in Baltimore County (Maryland) Circuit Court on December 27, 2011, by Plaintiff Jared Wright against his former employer, Koniag Services, Inc. ("KSI"), and timely removed to this Court. (ECF Nos. 1 & 2.) KSI has now filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 7.) The Court has considered the motion, Wright's opposition (ECF No. 9), and KSI's reply (ECF No. 10). No hearing is required. Local Rule 105.6 (D. Md. 2011). The motion will be granted under Rule 12(b)(6).

KSI has attacked the complaint based on the company's assertion that this Court lacks subject-matter jurisdiction and the complaint fails to state a claim for relief. Wright's complaint contains two counts of religious discrimination. The first is a claim of discrimination under Maryland state law, Md. Code Ann., State Gov't § 20-606 (LexisNexis 2009),[1] and the second is an identical claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

---

[1] The complaint cites the predecessor statute, Md. Ann. Code art. 49B, § 11B, which was repealed in 2009.

Since the second claim is the one under which the Court allegedly has original jurisdiction, KSI's argument as to lack of subject-matter jurisdiction of the Title VII claim will be addressed first.

KSI has put forth a factual challenge to subject-matter jurisdiction by claiming its entitlement to an exemption to Title VII.  The burden of proving subject-matter jurisdiction is on the plaintiff.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting challenge may be either facial, i.e., complaint fails to allege facts upon which subject-matter jurisdiction can be based, or factual, i.e., jurisdictional allegations of complaint are not true).  *See also Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Richmond, Fredericksburg & Potomac Ry. Co.*, 945 F.2d 765, 768 (1991) (same).  In the case of a factual challenge, it is permissible for a district court to "consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

KSI has presented evidence, not contested by Wright, in the form of an affidavit by its president, Edward O'Hare, that establishes KSI's status as a wholly owned subsidiary of a holding company, Koniag Development Corporation ("KDC"), which in turn is a wholly owned subsidiary of Koniag, Inc. ("Koniag").  (Mot. Dismiss, Ex. 2, O'Hare Aff. 1-2.)  Koniag is an Alaska Native Regional Corporation ("ANRC") formed pursuant to the Alaska Native Claims Settlement Act.  (*Id.*)  The Alaska Native Claims Settlement Act ("ANCSA") is codified at 43 U.S.C. § 1601 *et seq*.  In one section of the ANCSA, the following language is included:

> For the purposes of implementation of the Civil Rights Act of 1964 [42 U.S.C. 2000a et seq.], a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b)(1) of Public Law 88-352 (78 Stat. 253), as amended [42 U.S.C. 2000e(b)(1)], or successor statutes.

43 U.S.C. § 1626(g) (alterations in original).

Clearly, the wording of this statute cannot be construed in any way but to exclude an ANRC from Title VII's definition of "employer." However, Defendant has incorrectly cast this argument as one contesting subject-matter jurisdiction. The Supreme Court in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), held that Title VII's numerosity requirement in 42 U.S.C. § 2000e(b)'s definition of "employer" was not an element of subject-matter jurisdiction but only a requirement to be considered in the substantive adequacy of the Title VII claim. *Id.* at 504. Recognizing that "jurisdictional" was a term that had been loosely used in the past, *id.* at 511, the Court set forth a "readily administrable bright line":

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16. The Court then examined the two jurisdictional statutes at issue, the general federal-question statute, 28 U.S.C. § 1331, and the specific Title VII jurisdictional statute for federal lawsuits, 42 U.S.C. § 2000e-5(f)(3), and concluded that neither statute specified any threshold ingredient such as number of employees. *Id.* at 515. Thus, the threshold number of employees in § 2000e(b) was held to be an element of a Title VII plaintiff's claim for relief and not a jurisdictional issue. *Id.* at 516.

Applying *Arbaugh*'s holding to the instant case, this Court concludes that 43 U.S.C. § 1626(g) is not properly construed as a restriction on federal court subject-matter jurisdiction. Section 1626(g) does not "clearly state[ ]" that its qualification on the definition of "employer" in Title VII is jurisdictional. Thus, it is to be treated as nonjurisdictional in character. Since Wright's complaint alleges KSI "is a Virginia Corporation that employs more than fifteen employees and has offices located in Baltimore County, Maryland" (Compl. ¶ 4), the complaint adequately alleges the necessary definition of "employer" for a Title VII claim. Surely, a

plaintiff is not required to plead that the defendant is *not* an ANRC or any of the other entities listed in 42 U.S.C. § 2000e(b).  It would seem, then, that the exemptions from coverage allowed in both 42 U.S.C. § 2000e(b) and 43 U.S.C. § 1626(g) are properly asserted as affirmative defenses.  Because KSI can only establish its entitlement to the affirmative defense of § 1626(g) by presenting evidence outside of the pleadings, its motion on this point must be treated as one for summary judgment.  However, this case can be resolved under Rule 12(b)(6), and it is, therefore, unnecessary to determine whether the evidence and the law support KSI's assertion of the affirmative defense found in § 1626(g).

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.*

> The pertinent factual allegations in Wright's complaint are here set forth in full:
>
> 6. Plaintiff began working for Defendant in early December 2008 as a computer operator.
>
> 7. In the first weeks of his employment there were no problems and he got along well with his supervisor and other employees.
>
> 8. The problems began in or around December 20, 2008 when Plaintiff was asked by his supervisor Jacqueline Drafts ("Drafts") to assist with putting decorations on a Christmas Tree.  Plaintiff informed Drafts that his religion did not believe in celebrating Christmas and that he did not want to help.

9.  From that point onward Drafts harassed Plaintiff because of his religion by among other things: telling others about his strange religious beliefs, constantly asking him questions about his religion, and telling him that his religious beliefs were sexist.

10. Drafts also began singling Plaintiff out for special treatment. Specifically while all employees, including Drafts herself, would nap during the night shift, only Plaintiff was given a verbal reprimand for this.

11. Finally in or around May 2009, despite positive work performance by Plaintiff, he was set up to be terminated, while the real reason for his termination was hostility against him because of his religion.

. . .

13. Plaintiff is a member of a protected class in that he is a religious minority.

14. Plaintiff's work performance was satisfactory during his employment with Defendant.

15. Plaintiff was given a verbal reprimand and was also terminated because of his status as a religious minority.

(Compl.)

Wright's complaint appears to allege religious discrimination based upon a verbal reprimand and termination, but in his opposition to KSI's motion, he expressly disavows any interpretation of his complaint as asserting a cause of action based upon harassment and clarifies that his only theory of discrimination is wrongful termination based upon religious discrimination. (Pl.'s Opp. 9.) The specific actions that he alleges as showing religious discrimination are Drafts's telling others about his religious beliefs, asking him questions about his religion, and telling him his religious beliefs were sexist. He also alleges he was the only employee who received a verbal reprimand for napping during the night shift. Finally, he alleges "he was set up to be terminated," but this is merely a conclusion, and the Court is not bound to accept either it or his conclusion that "the real reason for his termination was hostility against him because of his religion."

Wright's complaint falls short of alleging sufficient facts to permit the Court to conclude his termination was motivated by his supervisor's alleged hostility to his religion. Drafts's telling others about his religious beliefs, asking him questions about his religion, and telling him his religious beliefs were sexist do not amount to religious discrimination. Certainly, those things evidence her curiosity, her outspokenness, and her opinion about his religion, but they are insufficient to allow the inference that Wright's termination was based on religious discrimination. Similarly, it is not reasonable to infer that his receiving a verbal reprimand for napping on the night shift was motivated by religious discrimination. In the end, Wright's complaint alleges only the mere possibility of misconduct. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (brackets omitted)).

The deficiency of the federal claim is equally a deficiency of the state claim. Accordingly, both counts of the complaint will be dismissed in a separate order.[2]

DATED this 10th day of April, 2012.

BY THE COURT:

/s/
James K. Bredar
United States District Judge

---

[2] Were the Court to reach the argument made by KSI as to the state law claim's being barred by the statute of limitations, the Court would agree with KSI that the claim is time-barred and that no basis exists for tolling the statute.